# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| WILDHORSE RESOURCES MANAGEMENT COMPANY, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION H-18-2456 |
| G&C CONSTRUCTION INTERNATIONAL, LLC, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are plaintiff Wildhorse Resources Management Company, LLC's ("Wildhorse") partial motion for summary judgment (Dkt. 19), defendant G&C Construction International, LLC's ("G&C") response in opposition (Dkt. 26), Wildhorse's reply (Dkt. 31), G&C's motion for leave to file sur-reply (Dkt. 33), and Wildhorse's objections (Dkt. 37). Having considered the motion, responses, evidentiary record, and applicable law, the court finds that Wildhorse's motion should be **DENIED**.[1]

## I. BACKGROUND

This is a declaratory judgment action arising out of an August 15, 2016 oilfield accident in which G&C's employee, Dalarius Qualls, was injured while transporting saltwater to one of Wildhorse's disposal wells in Louisiana. Dkt. 19 at 7; Dkt. 26 at 2. Qualls sued Wildhorse in

---

[1] Although Wildhorse purports to object to G&C's motion for leave to file sur-reply, Wildhorse offers no reasons why G&C's motion should not be granted. Instead, Wildhorse simply responds to G&C's arguments. *See* Dkt. 37. Accordingly, the court GRANTS G&C's motion (Dkt. 33) and Wildhorse's request in the alternative to file a sur-reply of its own. However, for the reasons explained below, these arguments are moot since the court finds that Louisiana law controls.

Louisiana state court ("the underlying suit").[2] Dkt. 19-1. Wildhorse instituted the instant suit in Texas state court on May 16, 2018, seeking a declaration that, under the parties' Master Service Agreement ("MSA"), G&C is contractually obligated to defend and indemnify Wildhorse. Dkt. 19-3 at 5. Specifically, Wildhorse asked the court to find that the MSA obligates G&C to defend and indemnify Wildhorse in the underlying suit. *Id.* Wildhorse also requested attorney's fees and costs. *Id.* On May 23, 2018, during mediation, one of Wildhorse's insurance carriers settled with Qualls. Dkt. 27 at 34. G&C removed the suit to this court on July 17, 2018. Dkt. 1. Wildhorse filed its motion for partial summary judgment on March 7, 2019. Dkt. 19.

The relevant portions of the MSA are the recitals, choice of law, and indemnity provisions. The recitals refer to Wildhorse as the "Company" and G&C as the "Contractor." Dkt. 19-2 at 1. Paragraph 24 discusses the parties' choice of law:

> a. THIS AGREEMENT WILL BE INTERPRETED UNDER THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAW PRINCIPLES . . . .
>
> b. THE PARTIES RECOGNIZE THAT WORK PERFORMED UNDER THIS AGREEMENT MAY BE PERFORMED IN MULTIPLE AND VARIOUS JURISDICTIONS. HOWEVER, THE PARTIES GENERALLY PREFER AND AGREE THAT, TO THE EXTENT POSSIBLE, THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED CONSISTENTLY IN ACCORDANCE WITH ITS EXPRESS TERMS AND THAT THE PARTIES' FIRST PREFERENCE OF THE LAW TO BE APPLIED SHALL BE GIVEN EFFECT IF AT ALL POSSIBLE.

*Id.* ¶ 24. Paragraph 8 of the MSA discusses the parties indemnity obligations. Specifically, paragraph 8(b) provides:

> b. ***Contractor's Indemnity – Personal Injury.*** Contractor will release, protect, Defend, indemnify, and hold harmless Company Group from and against any and all Claims for personal injury, bodily injury, illness or death of any member of

---

[2] The underlying suit is *Qualls v. Wildhorse Resources, LLC*, No. C651811, Section 26, 19th Judicial District Court, Parish of East Baton Rouge, Louisiana.

Contractor Group, which arise out of, relate to, or are connected with this Agreement.

*Id.* ¶ 8(b). Wildhorse owes G&C an identical indemnity obligation for claims against G&C by any Wildhorse personnel. *See id.* ¶ 8(d). Paragraph 8(f) further provides:

> f. ***Express Negligence.*** **THE RELEASE, DEFENSE AND INDEMNITY OBLIGATIONS CONTAINED IN SECTIONS 8(b) THROUGH 8(e) SHALL APPLY EVEN IF CAUSED, IN WHOLE OR IN PART, BY . . . NEGLIGENCE OR OTHER FAULT, WHETHER PASSIVE OR ACTIVE, . . . BUT NOT TO THE EXTENT CAUSED BY OR RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT . . . . BOTH PARTIES AGREE THAT THIS STATEMENT COMPLIES WITH THE REQUIREMENT KNOWN AS THE EXPRESS NEGLIGENCE RULE TO EXPRESSLY STATE IN A CONSPICUOUS MANNER TO AFFORD FAIR AND ADEQUATE NOTICE THAT THIS SECTION 8 HAVE** [sic] **PROVISIONS REQUIRING ONE PARTY TO BE RESPONSIBLE FOR THE NEGLIGENCE , STRICT LIABILITY, OR OTHER FAULT OF ANOTHER PARTY.**

*Id.* ¶ 8(f). Finally, the parties included "**SPECIAL PROVISIONS FOR LOUISIANA**" which provide that "[i]f, and only if, it is determined that the Parties' defense and indemnity rights and obligations hereunder are subject to the application of the State of Louisiana's Oilfield Anti-Indemnity Act, LSA-R.S. 9:2780 (the "LOIA"), then the provisions of this Section 8(i) shall apply[.]" *Id.* ¶ 8(i). Paragraph 8(i)(iii) states that these provisions "are intended to comply with the provisions [sic] *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994)," while paragraph 8(i)(iv) clarifies that "nothing in this Section 8(i) shall affect the Parties' choice of law set forth in Section 24 below." *Id.* ¶ 8(i).

The parties agree that three issues are before the court in Wildhorse's partial motion for summary judgment: (1) whether Texas or Louisiana law governs interpretation of parties' rights under the MSA; (2) whether G&C is obligated to defend and indemnify Wildhorse in the underlying suit; and (3) whether Wildhorse qualifies as an additional insured under G&C's insurance. *Compare* Dkt. 19 at 7 (setting forth issues before the court), *with* Dkt. 26 at 1–2 (same).

3

## II. LEGAL STANDARD

Summary judgment is proper only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[O]n summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor.'" *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L. Ed. 2d 895 (2014) (per curiam)). With regards to this partial motion for summary judgment, there are no disputed facts, only legal questions.

## III. ANALYSIS

**A.    Conflict of Laws**

Wildhorse asserts that this dispute—the question of whether G&C is obligated to indemnify Wildhorse for its settlement with Qualls[3]—is governed by Texas law, because that is the law chosen by the parties in their MSA. Dkt. 19 at 8–15. G&C asserts that, despite the MSA's choice of law provision, Louisiana law governs "because application of Texas law . . . would be contrary to a fundamental policy of Louisiana—a state with a materially greater interest in this dispute than Texas." Dkt. 26 at 7. The court "need not decide which state's laws apply unless those laws conflict." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008) (citing *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004)).

---

[3] Because it is undisputed that "G&C *did* provide a defense for Wildhorse, through G&C's insurers, for the entire duration of the Underlying Lawsuit" (Dkt. 26 at 1), the issue of whether G&C owes a duty to *defend* Wildhorse is moot. However, "a case may be moot as to some or most issues but viable as to others." *New Orleans S.S. Ass'n v. Plaquemines Port Harbor & Terminal Dist.*, 816 F.2d 1074, 1077 (5th Cir. 1987) (citing *Fla. Bd. of Bus. Regulation v. N.L.R.B.*, 605 F.2d 916 (5th Cir.1979)). Accordingly, the court must still determine whether G&C owes a duty to *indemnify* Wildhorse.

"Under Texas law, oilfield indemnity clauses are valid if they are mutual and supported by liability insurance." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 127.005; *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 346 (Tex. 2000)). "Additionally, indemnity clauses [under Texas law] must meet certain fair notice requirements." *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 169 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex.1993)). "Under Louisiana law, such clauses are invalid if the party seeking indemnity was negligent or strictly liable." *Sonat*, 271 S.W.3d at 231 (citing La. R.S. § 9:2780). Here, G&C does not dispute that the MSA's indemnity provisions comply with Texas law.[4] Nor does Wildhorse dispute that paragraphs 8(b) and 8(f), which require G&C to indemnify Wildhorse for Wildhorse's own negligence,[5] are invalid under Louisiana law.[6] Because the indemnity provisions would be enforceable under Texas law, but not under

---

[4] G&C does assert, as an affirmative defense, that even if Texas law controls, the indemnity obligation is void as to G&C under the Texas Transportation Anti-Indemnity Act. Dkt. 26 at 18–19. However, G&C does not dispute that, but for the application of this affirmative defense, the MSA's indemnity provisions would comply with Texas law. Because the court finds *infra* that Louisiana law controls, the court does not reach the issue of whether G&C has an affirmative defense under the Texas Transportation Anti-Indemnity Act.

[5] Although not raised by either party, the court notes that under controlling Fifth Circuit precedent, the fact that Wildhorse settled before a jury could decide if it was negligent would not operate as a bar to application of the LOIA. *See Tanksley v. Gulf Oil Corp.*, 848 F.2d 515, 518 (5th Cir. 1988) ("Absent such a finding, or a legal bar preventing the finding, as in *Melancon*, we must conclude that the Oilfield Indemnity Act nullifies, in this instance, the indemnity agreement between Chevron and SEE.").

[6] Whether paragraph 8(i), the "**SPECIAL PROVISIONS FOR LOUISIANA**," complies with the *Marcel* exception is not an issue properly before this court. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropo. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990)). G&C argues in its response brief that the *Marcel* exception does not apply because Wildhorse has not paid any portion of G&C's insurance premiums. Dkt. 26 at 17–18. Wildhorse did not raise this issue in its motion, nor does it respond to this argument in its reply or sur-reply. Although *Cutrera* dealt with a *plaintiff's* belated claim raised only in response to a motion for summary judgment, the court finds

Louisiana law, the laws of the two states are in conflict. So this court must decide which state's law applies.

**B.    Choice of Law**

Because Texas is the forum state, its choice-of-law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas follows the Restatement (Second) of Conflict of Laws ("Restatement"). *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). Section 187 of the Restatement provides that the "law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement § 187(1) (1971). The MSA, entered into on April 23, 2014, contains a choice of law provision requiring that the agreement be interpreted under Texas law. Dkt. 19-2 ¶ 24.

The particular issue here is whether the indemnity provisions of the MSA are enforceable. The enforceability of contractual provisions is not something "the parties could have resolved by an explicit provision in their agreement." *DeSantis*, 793 S.W.2d at 678 (citing Restatement § 187 comment d). The court therefore looks to section 187(2), which provides that the court should set aside the parties chosen law only where:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*DeSantis*, 793 S.W.2d at 677–78 (quoting Restatement § 187(2)(a)).

---

that holding equally applicable here. Until this issue is fully briefed by both parties and properly before the court, the court will not opine on its merits.

Section 187(2)(a) is inapplicable because Texas has a substantial relationship to the parties and the transaction. Wildhorse's principal offices are in Harris County, Texas (Dkt. 26 at 9), "Texas was the site of contracting" (*id.* at 7), and the MSA was negotiated in part in Texas (*id.* at 8). Accordingly, this court must decide whether the exception in section 187(2)(b) applies. The Texas Supreme Court has said:

> Whether that exception applies depends upon three determinations: first, whether there is a state the law of which would apply under section 188 of the RESTATEMENT absent an effective choice of law by the parties, or in other words, whether a state has a more significant relationship with the parties and their transaction than the state they chose; second, whether that state has a materially greater interest than the chosen state in deciding whether this noncompetition agreement should be enforced; and third, whether that state's fundamental policy would be contravened by the application of the law of the chosen state in this case. More particularly, we must determine: first, whether [Louisiana] has a more significant relationship to these parties and their transaction than [Texas]; second, whether [Louisiana] has a materially greater interest than [Texas] in deciding the enforceability of the [indemnity provisions] in this case; and third, whether the application of [Texas] law in this case would be contrary to fundamental policy of [Louisiana].

*DeSantis*, 793 S.W.2d at 678.

   1.   *Louisiana has a more significant relationship to these parties and their transaction.*

Section 188's "most significant relationship" test asks the court to look at five contacts: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement § 188(2).[7] Here, the place of contracting was Texas because Texas is where the "last act necessary . . . to give the contract binding

---

[7] Wildhorse asserts that "there is no basis for analyzing the MSA under section 188 rather than 187 because the exception in 187(2)(b) does not apply." Dkt. 31 at 2. However, the court can only determine the applicability of this exception by looking to section 188. Restatement § 187(2)(b). Moreover, Wildhorse itself analyzes the "most significant relationship" test of section 188 in its motion for summary judgment. Dkt. 19 at 11–13.

effect"—Wildhorse's countersignature—took place. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 583 (5th Cir. 2015). *See also* Dkt. 26 at 7 (G&C concedes that Texas is the place of contracting). Because the contract was negotiated in both Texas and Louisiana (*see* Dkt. 19 at 12; Dkt. 26 at 8), this factor is inconclusive. The fifth factor is equally inconclusive since Wildhorse is domiciled in Texas and G&C is domiciled in Louisiana. *See Cardoni*, 805 F.3d at 583 (domicile is "cancelled out" where one of the parties resides in one of the potentially applicable states and the other party resides in the other possible state).

In service contract cases, the Texas Supreme Court has held that the place of performance "is conclusive in determining what state's law is to apply." *DeSantis*, 793 S.W.2d at 679 (citing Restatement § 196). In *Chesapeake*, the court thought that place of performance could have either meant "where the . . . services were performed," or, "where the indemnity obligation was performed (by defending against the injured employee's suit)." *Chesapeake*, 94 S.W.3d at 171. While the answer in *Chesapeake* would have differed depending on the definition,"there is no question about what qualifies as the place of performance in this case because both the injury occurred and the lawsuit was filed (i.e., the situs of the indemnity) in [Louisiana]." *CMA-CGM (Am.), Inc. v. Empire Truck Lines, Inc.*, 416 S.W.3d 495, 514 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Accordingly, this "conclusive" factor weighs determinatively in Louisiana's favor. *DeSantis*, 793 S.W.2d at 679.[8] Moreover, this argument applies with equal force to the location of the subject

---

[8] Wildhorse's assertion that place of performance "bears little weight when determining which state has the most significant relationship" is based entirely upon an unpublished, intermediate appellate decision. Dkt. 19 at 13 (citing *N. Am. Tubular Servs., LLC v. BOPCO, L.P.*, No. 02-17-00352-CV, 2018 WL 4140635 (Tex. App.—Fort Worth Aug. 30, 2018, no pet.), reh'g denied (Oct. 25, 2018)). Moreover, the fact that the "MSA did not limit the 'Work' to be performed by G&C to particular projects in Louisiana" (Dkt. 19 at 13), carries little weight where "[p]rior to the incident that forms the basis of the Underlying Lawsuit, G&C had never transported any material or performed any work for Wildhorse in Texas pursuant to the MSA." Dkt. 26-1 at 33–34.

matter of the contract. Thus, Louisiana has the more significant relationship. *Maxus Expl. Co. v. Moran Bros.*, 817 S.W.2d 50, 53 (Tex. 1991) ("In the case of a contract for the rendition of services, section 196 accords the place of performance paramount importance." (quoting *DeSantis*, 793 S.W.2d at 679)).

    *2.    Louisiana has a materially greater interest than Texas.*

    G&C argues that Louisiana has the greater interest in having its public policy applied "to a Louisiana company for injuries to a Louisiana citizen that results in a Louisiana lawsuit." Dkt. 26 at 10. Wildhorse fails to respond to this argument, or to address which state has the materially greater interest. Certainly Texas has "a general interest in protecting the justifiable expectations of entities doing business in several states." *DeSantis*, 793 S.W.2d at 679 (finding that Texas law applied despite the parties' choice of Florida law). And, "[o]ne can argue that the Texas Legislature's purpose in enacting chapter 127 is to protect Texas contractors who work on mineral wells and mines wherever they may be situated, but we think it more plausible that it had the more limited objective of protecting contractors who drill wells *in Texas*." *Maxus*, 817 S.W.2d at 57 (emphasis added). However, Louisiana has a similar, if not stronger, interest in protecting Louisiana contractors operating in Louisiana:

> The force of Louisiana's public policy disfavoring indemnity agreements, as stated in the LOIA, is unquestionably very strong. *See Matte*, 784 F.2d at 631 ("The public policy of Louisiana is clear, certain, and unambiguous. Any provision which attempts to provide a defense of indemnity . . . is void and unenforceable."). The language of the LOIA makes it clear that Louisiana has a very strong policy against allowing its oil and gas well sub-contractors to be manipulated by well owners and operators who would foist the burden of indemnification on them through work agreements, and subjecting these subcontractors to contrary laws permitting indemnification provisions in other jurisdictions.

*Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 942 (5th Cir. 2000).

9

Wildhorse argues that "*Roberts* is not controlling" because it "was decided under Louisiana choice of law principals [sic]." Dkt. 31 at 3. It is true that the fact pattern of *Roberts* is different from the facts of this case, but standing alone, the Fifth Circuit's interpretation of the LOIA and Louisiana's public policy is applicable (and binding) irrespective of individual fact patterns. Accordingly, the court finds that Louisiana's interests—in protecting Louisiana contractors operating in Louisiana, and in seeing the application of Louisiana public policy being applied to Louisiana residents in Louisiana lawsuits arising out of injuries in Louisiana—are materially greater than those of Texas. *See, e.g. CMA-CGM (Am.)*, 416 S.W.3d at 517 (citing "a state's significant interest in both its residents and business contained within its borders" in finding the interest of Texas to be greater than that of Maryland, despite the parties' selection of Maryland law).

3.  *Application of Texas law would be contrary to a fundamental Louisiana policy.*

In determining whether a policy is "fundamental," the "'focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.'" *Cardoni*, 805 F.3d at 585 (quoting *DeSantis*, 793 S.W.2d at 680). The court thinks this question is answered directly in *Silverman v. Mike Rogers Drilling Co., Inc.*, 34 So.3d 1099 (La. App. 2 Cir. 4/14/10).

In *Silverman*, an oilfield contractor and operator chose Arkansas law to govern their drilling contract, which included indemnification provisions similar to those at issue here. 34 So.3d at 1100–01. When one of the operator's employees was injured in Louisiana by one of the contractor's employees, the injured worker sued the contractor in Louisiana. *Id.* at 1101. The contractor filed a third-party demand against the operator seeking indemnification under the contract. *Id.* Despite the parties' original intentions to chose Arkansas law, which would have allowed for such

10

indemnification, the court found "that the contract's selection of Arkansas law is against public policy" and the Louisiana court refused to enforce it. *Id.* at 1104. *Silverman* thus stands for the proposition that the LOIA "is part of a state policy so fundamental that courts of [Louisiana] will refuse to enforce an agreement contrary to [the LOIA], despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.'" *Cardoni*, 805 F.3d at 585 (quoting *DeSantis*, 793 S.W.2d at 680). *See also Chesapeake*, 94 S.W.3d at 178 ("We assume these [Texas and Louisiana oilfield indemnity] policies are 'fundamental' (as required by the Restatement), especially as each state has taken the unusual step of stating it explicitly.").

Having established that the LOIA is a fundamental Louisiana policy, the final and most difficult question is whether the application of Texas law would be contrary to Louisiana's policy. Wildhorse makes much ado of comment g to Restatement section 187, which provides that the "forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." Dkt. 19 at 14 (citing Restatement § 187 comment g). At least one intermediate Texas appellate court has relied on the same logic. *See Chesapeake*, 94 S.W.3d at 178 ("Nevertheless, because the policies are identical, we do not see how one can contravene the other.").

However, in *Chesapeake*, a deeply divided court dealt with different facts from those at issue here. In *Chesapeake*, the contractor and operator were domiciliaries of Texas and Oklahoma—neither was a Louisiana citizen. *Id.* at 170. In refusing to apply the LOIA, the court found that the interests of Texas—in protecting "fair bargaining by resident businesses" and in "contractual freedom"—"outweigh[ed] any interest Louisiana has in voiding a contract between *foreign* companies regarding *foreign* litigation." *Id.* at 176 (emphasis added). Certainly Texas retains those

11

same interests here because Wildhorse is a Texas resident. But, as discussed above, the Louisiana interests are far greater where, as here, the contractor seeking the protection of the LOIA is a Louisiana citizen who was operating in Lousiana when its employee—also a Louisiana citizen—was injured and sued in Louisiana courts. *See, e.g., Sonat*, 271 S.W.3d at 233 (commenting that "place of business is arguably significant because oilfield indemnity statutes are intended to protect contractors from unfair bargaining"). The Restatement instructs that:

> Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue.

Restatement § 187, comment g. Because Louisiana has a materially greater interest than Texas, the LOIA is a fundamental policy of Louisiana, and Louisiana law would otherwise apply under § 188, the court finds that the application of Texas law is against the public policy of Louisiana, and therefore the indemnity provisions are unenforceable.

### C. Wildhorse's Status as an Additional Insured Is Not Properly Before This Court

Wildhorse asks this court to find that it "qualifies as an additional insured under G&C's insurance policies," citing to paragraph six of the MSA. Dkt. 19 at 21. However, "[s]ummary judgment cannot be entered on a claim not pleaded in the complaint, as that claim is not fairly before the Court." *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 697 (S.D. Tex. 2015) (Tagle, J.) (citing *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 498–99 (5th Cir.1998)). G&C correctly points out that Wildhorse's petition "makes no indication, either in its allegations or in its request for relief, that its status as an additional insured on G&C's insurance policies should be any part of a declaration by the Court." Dkt. 26 at 20–21. Indeed, the words "additional insured" do not appear anywhere in Wildhorse's petition. Dkt. 19-3. Moreover, whereas

Wildhorse's petition specifically directs the court's attention to the MSA's indemnity provisions (Dkt. 19-3 at 3), the petition makes no mention of paragraph 6, the MSA's insurance provision. *Id.*

Wildhorse's reply fails to address this issue. Instead, Wildhorse simply asserts, without citation to any law, that "the Court can issue a ruling the MSA required G&C to name Wildhorse [as] an additional insured on its insurance policies." Dkt. 31 at 5. The court can do no such thing. It is true that the "form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981). However, Wildhorse's petition fails to allege any facts about its status as an additional insured, or G&C's purported failure to name it as an additional insured. By the parties' own agreement, Wildhorse had until November 30, 2018 to amend its petition to add this claim. Dkt. 12. It did not do so, and the court cannot rule on a claim not fairly before it. *La Union del Pueblo Entero*, 141 F. Supp. 3d at 697.

### IV. CONCLUSION

For the reasons stated above, Wildhorse's partial motion for summary judgment (Dkt. 19) is **DENIED**.[9]

Signed at Houston, Texas on October 31, 2019.

_____
Gray H. Miller
Senior United States District Judge

---

[9] "A partial summary judgment order in accordance with Rule 56(d) is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." *F.D.I.C. v. Massingill*, 24 F.3d 768, 774 (5th Cir.), *op. supp'd on denial of reh'g*, 30 F.3d 601 (5th Cir. 1994).

13